**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cecilia Tropp,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>Jo Anne Barnhart, Commissioner of the Social Security<br><br>　　　　Defendant. | No. CV 06-0606-PCT-MHM<br><br>**ORDER** |

Plaintiff Cecilia Tropp ("Plaintiff") seeks judicial review of the Administrative Law Judge's ("ALJ") decision denying her claim for disability insurance benefits. 42 U.S.C. § 405(g).

**I.     Procedural History**

Plaintiff filed an application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 405(g), on February 19, 2003. (Tr. 80-82). The application was denied initially and upon reconsideration. (Tr.62-65, 68-71). On November 10, 2004, a hearing was held in front of an Administrative Law Judge ("ALJ"). (Tr.24). On March 22, 2005, the ALJ issued a decision denying Plaintiff's application. (Tr.24-32). On January 12, 2006, the Appeals Council denied Plaintiff's request for review. (Tr.5-7). On February 28, 2006, Plaintiff initiated the instant action for judicial review.

**II.    Background Facts**

　　　　**A.     Plaintiff's Medical History**

1  Plaintiff asserts that she became unable to work due to her illnesses, injuries or
2 conditions on January 21, 2003. (Tr.85). On January 16, 2003, Plaintiff was examined by
3 Nannete Sharp ("P.A. Sharp"), a physician's assistant with the office of Sherif A. Nasef, M.D.
4 ("Dr. Nasef"). Ms. Sharp's assessment of Plaintiff's complaints regarding her back, neck and
5 shoulder pain was musculoskeletal muscle spasm and osteoarthritis. (Tr.174). On January
6 21, 2003, Plaintiff had a neck/back pain assessment performed by Dr. Nasef. (Tr.171-72).
7 Dr. Nasef diagnosed myofascial back pain and continued the prescriptions of Skelaxin and
8 Relafen. (Tr.172). On January 27, 2003, P.A. Sharp also noted that Plaintiff complained of
9 spasm and tenderness on the left side of her lumber side. (Tr.169). P.A. Sharp assessed
10 Lumbosacral spine strain and osteoarthritis. (Id.). On February 7, 2003, P.A. Sharp recorded
11 that Plaintiff reported to be doing better with the back pain because of the physical therapy
12 but still complained of spasm, swelling and pain in the lower left area of her back. (Tr.165).
13 Physical therapy was continued and Plaintiff was continued to off-work status as she was
14 unable to perform the duties requested by her employer. (Id.). On March 3, 2003, PA Sharp
15 allowed Plaintiff to resume "light duty" when Plaintiff returned to work on March 7, 2003.
16 (Tr.158). However, on April 11, 2003, Plaintiff again was examined by P.A. Sharp after
17 Plaintiff presented with muscle spasms in her neck and shoulders and a pain that radiated
18 down her leg. (Tr.154). P.A. Sharp noted that she doubted that Plaintiff could be able to
19 continue her type of work and instructed Plaintiff to be off-work indefinitely. (Id.).

20  On May 10, 2003, Plaintiff was examined by Dr. Nasef, who diagnosed bilateral
21 rotator cuff tendinitis, injected Plaintiff with a steroid injection in her right shoulder and
22 referred Plaintiff for physical therapy. (Tr.152). Dr. Nasef also diagnosed possible
23 osteoarthritis with degenerative disc disease of the cervical spine. (Id.). On June 21, 2003,
24 Plaintiff was again seen by Dr. Nasef who again diagnosed right rotator cuff tendinitis and
25 osteoarthritis and degenerative disc disease of the lumbar spine. (Tr.151). Plaintiff was again
26 given a steroid injection. (Tr.151). On July 7, 2003, Plaintiff was seen by M.A. Kazmi, M.D
27 ("Dr. Kazmi"), a neurologist, upon referral from Dr. Nasef. (Tr.197). Dr. Kazmi diagnosed
28 Plaintiff with chronic backaches, neck and back pain and muscular spasm and they discussed

treatment options. (Tr.199). On August 2, 2003, Plaintiff was again seen by Dr. Nasef who noted an improvement in Plaintiff's symptoms. (Tr.147). Dr. Nasef continued with his previous diagnosis and that Plaintiff would continue to follow up. (Id.).

On August 19, 2003, P.A. Sharp performed a medical source statement regarding Plaintiff's work related capabilities. (Tr.145-46). P.A. Sharp concluded that Plaintiff could occasionally lift ten pounds and frequently lift less. (Id.). P.A. Sharp also concluded that Plaintiff could stand and/or walk and sit about six hours in an eight-hour day. (Id.). On September 13, 2003, Plaintiff was again seen by Dr. Nasef regarding the results of her MRI. (Tr.142). Dr. Nasef noted a decreased range of motion of the cervical spine and lumbar spine. (Id.). Dr. Nasef conducted a work related capabilities examination finding that Plaintiff could occasionally lift up to ten pounds and frequently lift less. (Tr.143-44). Dr. Nasef also concluded that Plaintiff could stand and/or walk for less than two hours in an eight-hour work day and could only sit for 45 minutes to one hour in an eight-hour work day. (Id.).

On September 24, 2003, Plaintiff was again seen by Dr. Kazmi regarding Plaintiff's complaints of left ankle and back pain. (Tr.195). Dr. Kazmi noted that Plaintiff had recently twisted her ankle and recommended that Plaintiff use a cane to ambulate. (Id.). Dr. Kazmi diagnosed left ankle pain, chronic backache, cervical muscle spasm, chronic pain, chronic cervical pain musculoskeletal in nature, multiple muscle join pain and muscular spasm. (Tr.196). On September 25, 2003, Plaintiff was seen by Marc Zimmerman, M.D. ("Dr. Zimmerman"), upon which time it was determined that Plaintiff sustained a "nondisplaced distal fibula fracture." (Tr.204). Plaintiff was directed to continue with a "pneumatic walker." (Id.). On October 30, 2003, x-rays revealed that the fracture was healing and Dr. Zimmerman directed that Plaintiff wean herself from the assisting devices such as canes. (Tr.201-02).

On December 23, 2003, Ray Hughes, M.D. ("Dr. Hughes") a state non-examining physician performed a physical residual functional capacity assessment of Plaintiff. (Tr.205-12). Dr. Hughes concluded that Plaintiff could occasionally lift up to ten pounds and

1  frequently less. He also concluded that Plaintiff could stand and/or walk up to two hours in
2  an eight-hour day and sit with normal breaks for about six hours of an eight-hour day.
3  (Tr.206).

4       On March 29, 2004, Plaintiff was examined by William Binder, M.D. ("Dr. Binder")
5  upon referral from Dr. Kazmi. (Tr.236-37). Dr. Binder noted that Plaintiff appeared to be
6  in discomfort and that the left leg appeared to be "cooler in the foot to palpation." (Tr.236).
7  Dr. Binder provided Plaintiff with an injection and it seemed to provide some temporary
8  help. (Tr.237). On April 6, 2004, Dr. Binder authored a letter to Dr. Kazmi noting that there
9  were "differential color and temperature differences in [Plaintiff's] leg consistent with reflex
10 dystrophic problems." (Tr.233).   On April 23, 2003, Dr. Kazmi examined Plaintiff and
11 diagnosed reflex sympathetic dystrophy ("RSD"). (Tr.270). Dr. Kazmi noted that Plaintiff
12 had "a terrible time walking because of the pain." (Id).

13      On May 17, 2004, Plaintiff was examined by Mandeep Powar, M.D., ("Dr. Powar")
14 upon referral from Dr. Kazmi. Dr. Powar, upon examination, concluded that although
15 Plaintiff could have presented with symptoms of RSD they seemed to have resolved.
16 (Tr.248). Dr. Powar noted the Plaintiff's continued pain and discoloration of her leg. Dr.
17 Powar recommended an epidural steroid injection to control the pains shooting down her legs
18 and back spasms. (Tr.249). Plaintiff was administered the last of the three shots in August
19 of 2004. (Tr.242). Plaintiff returned to Dr. Powar on September 17, 2004, presenting with
20 shoulder and neck pains. Plaintiff received another steroid injection. (Tr.240). On October
21 6, 2004, Plaintiff was seen by Dr. Kazmi for neck and lower back pain. Dr. Kazmi diagnosed
22 musculoskeletal pain in the neck and possible radiculitis and multiple joint pains. (Tr.255).

23      **B.**    **Hearing Testimony**

24      On November 10, 2004, at the hearing before the ALJ, testimony was given by the
25 Plaintiff and Maude Prall, a vocational expert. Plaintiff, age 49 at the time of the hearing,
26 testified to having a high school education and past work experience as a housekeeper,
27 receptionist at a campground, machine operator and line worker. (Tr.41-42). Plaintiff testified
28

- 4 -

1  that she was unable to work due to pain in her neck, arms, hands, lower back, lower left hip,
2  and spine. (Id; Tr.48-49). Plaintiff complained of spasms resulting from the pain. (Id.).

3  At the hearing, the vocational expert was posed several hypotheticals by the ALJ.
4  Specifically, the ALJ asked the vocational expert if an individual with the Plaintiff's
5  educational level and work level could perform any work, assuming Plaintiff had difficulty
6  standing and walking for a long period of time, could perform only sedentary work,
7  occasional climb ramps and stairs, kneel, crouch, crawl and unable to climb ladders, ropes
8  and scaffolds with no exposure to extreme hot or cold. (Tr.57). The vocational expert
9  answered that there was work available as a line worker as well as noted that even with the
10 assistance of a cane to ambulate, this work was available. (Tr.57). Although it appears one
11 of the hypotheticals posed by the ALJ was not recorded, the transcript reveals the vocational
12 expert testified that no work was available for the Plaintiff if Plaintiff could not sit, stand and
13 walk for less than eight hours. (Tr.58).

### C.   ALJ's Conclusion

15 On March 22, 2005, the ALJ denied Plaintiff's claim for disability benefits following
16 the five step sequential analysis. (Tr.24-32). At step one, the ALJ found that the Plaintiff had
17 not engaged in substantial gainful activity since her onset date of January 21, 2003. (Tr.25).
18 At step two, the ALJ concluded that Plaintiff's impairments of osteoporosis, RSD,
19 musculoskeletal pain, and joint pain constituted severe impairments under the Social Security
20 Act. (Id.). At step three, the ALJ found that these severe impairments did not meet or equal
21 the criteria of any listed impairment pursuant to Appendix 1 of the Regulations, 20 CFR, Part
22 404, Subpart P, Appendix 1. (Tr.26). At step four, the ALJ concluded that the Plaintiff
23 possessed the residual functional capacity to "perform the full range of sedentary exertional
24 work" with some limitations including only occasionally climbing stairs or ramps, crouching,
25 crawling, and avoidance of extreme heat or cold. (Id.). In making this determination, the
26 ALJ gave significant weight to the December 23, 2003, residual functional capacity
27 assessment by Dr. Hughes, the state non-examining physician to the extent it was "consistent
28 with the substantive weight of the objective medical evidence. (Tr.31). The ALJ gave "no

- 5 -

1 weight" to Plaintiff's treating physician, Dr. Nasef's, September 13, 2003, evaluation where
2 he opined that Plaintiff could only sit for 45 minutes to an hour in an eight-hour day because
3 of Plaintiff's worsening pain. (Tr.30; 143-144).  In rejecting Dr. Nasef's findings, the ALJ
4 concluded that Dr. Nasef was "sympathetic to the claimant and based his opinion on her
5 subjective allegations of pain, which are not corroborated by his clinical findings on
6 examination or the objective medical evidence." (Tr.31).  In addition, the ALJ rejected the
7 Plaintiff's credibility as to the severity of her symptoms, or pain.  The ALJ concluded that
8 her complaints were subjective and did not warrant any additional limitations beyond those
9 established in his previously determined residual functional capacity evaluation. (Tr.30).
10 Thus, at step five, based upon the ALJ's findings regarding the Plaintiff's capabilities, and
11 the hypothetical posed to the vocational expert, the ALJ concluded that Plaintiff could
12 perform her past relevant work as a line worker. (Tr.31).

13 **III.    Standard of Review**

14     This Court must affirm the ALJ's findings if they are supported by substantial
15 evidence and free from reversible legal error. Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir.
16 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence
17 as a reasonable mind might accept as adequate to support a conclusion."  Richardson v.
18 Perales, 402 U.S. 389, 401 (1971); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

19     In determining whether substantial evidence supports a decision, the Court considers
20 the record as a whole. Richardson, 402 U.S. at 401; Tylitzki v. Shalala, 999 F.2d 1411, 1413
21 (9th Cir. 1993).  If there is sufficient evidence to support the ALJ's determination, the Court
22 cannot substitute its own determination.  Young v. Sullivan, 911 F.2d 180, 184 (9th Cir.
23 1990).  Where evidence is inconclusive, "questions of credibility and resolution of conflicts
24 in the testimony are functions solely of the [Commissioner]." Sample v. Schweiker, 694 F.2d
25 639, 642 (9th Cir. 1982).  Therefore, if on the whole record before the Court, substantial
26 evidence supports the Commissioner's decisions, this Court must affirm.  Hammock v.
27 Bowen, 879 F.2d 498, 501 (9th Cir. 1989); 42 U.S.C. § 405(g).

28

- 6 -

1   An ALJ determines an applicant's eligibility for disability benefits through the
2   following five stages:

3   (1) determine whether the applicant is engaged in "substantial gainful activity;"

4
5   (2) determine whether the applicant has a "medically severe impairment or combination of impairments;"

6   (3) determine whether the applicant's impairment equals one of a number
7   of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

8
9   (4) if the applicant's impairment does not equal one of the "listed impairments," determine whether the applicant is capable of performing his or her past relevant work;

10
11  (5) if the applicant is not capable of performing his or her past relevant work, determine whether the applicant "is able to perform other work in the national economy in view of his [or her] age, education, and
12  work experience."

13  Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (citing 20 C.F.R. §§ 404.1520(b)-(f)).  See

14  20 C.F.R. § 416.920. At the fifth stage, the burden of proof shifts to the Commissioner.

15  Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

16  **IV.   Discussion**

17       Plaintiff raises three issues on appeal: (1) whether the ALJ erred in rejecting the

18  opinion of Plaintiff's treating physician, Dr. Nasef, regarding Plaintiff's ability to perform

19  work related activities; (2) whether the ALJ erred in rejecting Plaintiff's credibility as to the

20  severity of her symptoms; and (3) whether the ALJ erred in posing a hypothetical to the

21  vocational expert based upon the assessment of a non-testifying, non-examining state agency

22  physician. The Court will address these issues below.

23       **A.    ALJ's Rejection of Opinion by Dr. Nasef**

24       Plaintiff takes exception with the ALJ's rejection of the limitation asserted by

25  Plaintiff's treating physician, Dr. Nasef, that Plaintiff could only sit for forty-five minutes

26  to an hour of an eight-hour work day due to Plaintiff's pain associated with Plaintiff's

27  degenerative disc and disease of the spine. (Tr.143-44).  Plaintiff argues that the ALJ failed

28  to provide the requisite clear and convincing or even specific and legitimate reasons in

- 7 -

1 rejecting Dr. Nasef's findings. Defendant, on the other hand, contends that the controverted
2 findings of Dr. Nasef were properly rejected by the ALJ.

3 "The ALJ may disregard the treating physician's opinion whether or not that opinion
4 is contradicted." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989). When presented
5 with conflicting medical opinions, the ALJ must determine credibility and resolve the
6 conflict. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir.1992). Greater weight must be
7 given to the opinion of treating physicians, and in the case of a conflict "the ALJ must give
8 specific, legitimate reasons for disregarding the opinion of the treating physician." Id. The
9 ALJ can meet this burden by setting out a detailed and thorough summary of the facts and
10 conflicting clinical evidence, stating his interpretation thereof, and making findings. Thomas
11 v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (quoting Magallanes v. Bowen, 881 F.2d 747,
12 751 (9th Cir.1989)).

13 In reviewing the record on this issue, the Court agrees with the Defendant that the ALJ
14 did meet his burden in rejecting Dr. Nasef's opinion regarding Plaintiff's limitation as to
15 sitting during an eight-hour day. Although the ALJ's determination is somewhat short, the
16 ALJ adequately provided specific and legitimate reasons grounded in the record in rejecting
17 Dr. Nasef's controverted findings. Most notably, the ALJ determined that Dr. Nasef's
18 limitation was not supported by his "clinical findings" or the objective medical evidence.
19 (Tr.31). In reviewing Dr. Nasef's records, it is apparent that the ALJ's determination on this
20 point is supported by substantial evidence. For instance, in reviewing Dr. Nasef's records
21 prior to his work related activities assessment on September 13, 2003, it is apparent that no
22 such drastic limitation regarding Plaintiff's ability to sit for an extended period is suggested.
23 For instance, on Plaintiff's May 10, 2003 visit, Dr. Nasef diagnosed possible osteoarthritis
24 with degenerative disc disease of the cervical spine as well as noted that Plaintiff presented
25 with "no acute distress." (Tr.152). In fact, the visits leading up to the September 13, 2003,
26 assessment by Dr. Nasef, including on the very day, suggest that Plaintiff did not appear to
27 be in distress to support such a drastic limitation. (Tr.151,147,142). Moreover, in Plaintiff's
28 visits with Dr. Nasef the only notable limitations suggested a decreased or tender range of

1  motion. (152, 151,147,142).  None of Plaintiff's treatment records with Dr. Nasef support
2  such a drastic limitation as to Plaintiff's ability to sit during an eight-hour day.  In addition,
3  as noted by the ALJ, in finding such a drastic limitation, Dr. Nasef appears to have relied on
4  Plaintiff's subjective complaints of pain, rather than the medical record, which is a properly
5  considered relevant factor in discounting such an opinion.  See Fair v. Bowen, 885 F.2d 597,
6  605 (9th Cir. 1991).  Also, in rejecting Dr. Nasef's findings, the ALJ afforded weight to the
7  opinion of the state non-examining physician, Dr. Hughes, (Tr.205-12), who found no such
8  significant limitations regarding Plaintiff's ability to perform sedentary work. Contrary to
9  Plaintiff's argument, the Court does not find any error with the ALJ's reliance on this
10 determination from a non-examining physician as it appears consistent with the medical
11 record regarding Plaintiff's limitations.  See  Morgan v. Apfel, 169 F.3d 595, 602 (9th
12 Cir.1999) (stating that "rejection of opinion of a treating or examining physician [may] be
13 based, *in part*, on the testimony of a nontreating, nonexamining physician.") (emphasis
14 original).  In the instant case, the record reveals that the ALJ properly evaluated and rejected
15 the limitation stated by Dr. Nasef based upon the medical record and, in part, the opinion of
16 the state physician, Dr. Hughes.[1]    Thus, the Court finds that the ALJ met his burden in
17 providing specific and legitimate reasons supported by the record in rejecting the significant
18 limitations suggested by Plaintiff's physician, Dr. Nasef.

19         **B.     Rejection of Plaintiff's Credibility as to Severity of Her Symptoms**

20         Plaintiff also asserts that the ALJ committed error in rejecting the severity of
21 Plaintiff's symptoms such as her pain level impacting her ability to work.  Defendant, on the
22 other hand, contends that the ALJ sufficiently complied with his obligation in rejecting
23 certain aspects of Plaintiff's testimony.

24         "[I]f there is medical evidence establishing an objective basis for some degree of pain
25 and related symptoms, and no evidence affirmatively suggesting that the claimant was

---

[1] It is relevant to note that Dr. Hughes findings are also consistent with the work related assessment performed by P.A. Sharp. (Tr.145-46).

1  malingering, the Secretary's reason for rejecting the claimant's testimony must be clear and
2  convincing and supported by specific findings." Dodrill v. Shalala, 12 F.3d 915, 918 (9th
3  Cir. 1993). General findings are insufficient, rather the ALJ must identify what evidence is
4  not credible and what evidence undermines the claimant's complaints. Id.   In the instant
5  case, there is no issue with the underlying impairments or the lack of evidence of
6  malingering, rather the issue centers on whether the ALJ provided the requisite clear and
7  convincing reasons supported by the evidence upon rejecting Plaintiff's credibility regarding
8  the severity of her symptoms.

9       In reviewing the record on this point, the Court finds that the ALJ properly considered
10  relevant factors in reaching his credibility determination. See Magallenes v. Bowen, 881
11  F.2d 747, 750 (9th Cir. 1989) (stating that "the ALJ is responsible for determining credibility
12  and resolving conflicts in medical testimony."). For instance, the ALJ cited multiple relevant
13  factors recognized by the Ninth Circuit in discounting Plaintiff's testimony as to the severity
14  of her symptoms. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (noting
15  relevant factors to include the nature, duration, location, onset, intensity of pain, functional
16  restrictions and claimant's daily activities.); see also SSR 96-7. The ALJ cited such factors
17  as the lack of objective medical evidence supporting Plaintiff's testimony that she could not
18  sit for more than 30 minutes. As noted above, such a limitation is simply not supported by
19  the medical record. In addition, the ALJ cited contradictory testimony of Plaintiff to that of
20  the medical record regarding the usefulness of the epidural injections she received. (Tr.30;
21  242). Moreover, the ALJ noted that shortly after Plaintiff's alleged onset date, P.A. Sharp,
22  recommended that Plaintiff return to "light" work. (Tr.160). Finally, the ALJ noted that
23  none of the recent doctors treating Plaintiff opined that Plaintiff was not capable of working.
24  While Plaintiff clearly disagrees with the ALJ's determination, the Court's review is limited
25  to whether the ALJ provided the requisite clear and convincing reasons to support his
26  determination. In reviewing the cited bases of the ALJ, the Court determines that the ALJ
27  met this obligation.
28

**C.    ALJ's Stated Hypothetical to Vocational Expert Re: Plaintiff's Limitations.**

Lastly, Plaintiff contends that it was improper for the ALJ to rely on Dr. Hughes in formulating his hypothetical to the vocational expert regarding the Plaintiff's ability to engage in work. Plaintiff contends that in no circumstances is it appropriate for an ALJ to rely on a non-testifying non-examining physician in making an assessment of a claimant's limitations. Thus, in this case, Plaintiff contends that ALJ's hypothetical to the vocational expert based upon the Plaintiff's ability to perform sedentary work was error as such a determination arose from Dr. Hughes' residual functional capacity assessment. (Tr.205-12). However, as noted above, it is not error for any ALJ to rely on a non-examining physician when his or her findings are supported by independent medical evidence in the record. See Morgan 169 F.3d at 602; see also Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999) (stating ALJ's depiction of limitations required to be accurate, detailed and supported by medical evidence.). As discussed above, Dr Hughes' findings as to Plaintiff's ability to perform sedentary work are supported as there is no credible evidence in the record suggesting that Plaintiff is further limited.  As such, the Court finds no error with the ALJ's reliance upon Dr. Hughes' residual functional capacity assessment and ultimate conclusion based upon the hypothetical posed to the vocational expert.

**V.    Summary**

The Court finds that the ALJ adequately complied with his obligation in rejecting Plaintiff's treating physician's opinion and Plaintiff's credibility as to the severity of her symptoms. In addition, the ALJ properly relied, in part, upon the findings of the Dr. Hughes in determinating Plaintiff's residual functional capacity.[2]

**Accordingly,**

---

[2] Plaintiff has also requested that this matter be remanded because of certain "inaudible" notations in the transcript; however, in reviewing the record none of these notations materially bear on this Court's determination, thus making the requested remand unnecessary.

- 11 -

1  **IT IS HEREBY ORDERED** denying Plaintiff's Motion for Summary Judgment. (Dkt.#14).

2  **IT IS FURTHER ORDERED** denying Plaintiff's Motion for Remand. (Dkt.#15).

3  **IT IS FURTHER ORDERED** granting Defendant's Motion for Summary Judgment. (Dkt.#23).

4  **IT IS FURTHER ORDERED** directing the Clerk to enter judgment accordingly.

DATED this 29th day of March, 2007.

_____
Mary H. Murguia
United States District Judge